UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD R. RENZI,<br><br>    Plaintiff,<br><br>v.<br><br>ALEX AZAR, Secretary, U.S. Dep't of Health and Human Services, ANDREW E. LELLING, U.S. Attorney for the District of Massachusetts, and WILLIAM BARR, U.S. Attorney General,[1]<br><br>    Defendant. | No. 17-cv-11456-DLC |

**MEMORANDUM AND ORDER**

CABELL, U.S.M.J.

I. **INTRODUCTION**

    Plaintiff Ronald Renzi moves for summary judgment and an order reversing a decision of the Secretary of the U.S. Department of Health and Human Services (HHS) denying his wife Phyllis Renzi Medicare coverage for dental extractions and related services.[2] (D. 27). The Secretary in turn cross-moves for summary judgment

---

[1] The original complaint was filed against Thomas E. Price, William D. Weinreb, and Jeff Sessions, but because Alex Azar became the Secretary of HHS on January 24, 2018, and Andrew E. Lelling became the U.S. Attorney for the District of Massachusetts on December 21, 2017, and William Barr became the U.S. Attorney General on February 14, 2019, they have been automatically substituted as the Defendants pursuant to Fed. R. Civ. P. 25(d).

[2] The plaintiff has moved on behalf of his wife pursuant to 42 C.F.R. § 405.910, which permits an appointed representative to appeal on behalf of a Medicare beneficiary.

and an order affirming his final decision. (D. 28). Following a careful review of the record, the plaintiff's motion will be denied and the Secretary's motion will be allowed. The reasons for these rulings are explained below.

## II. PROCEDURAL HISTORY

On March 8, 2016, Kent County Hospital (the Hospital) submitted a claim to National Government Services (NGS)[3] requesting Medicare Part B coverage for dental extraction and related services provided to Phyllis Renzi. (HHS Administrative Record, pg. 171 (R. __)). NGS denied the claim twice, first on March 10, 2016, and then again on June 2, 2016 following the Hospital's request for reconsideration. (R. 166, 171).

On September 3, 2016, the plaintiff requested reconsideration by a Medicare qualified independent contractor (QIC). (R. 164-65). On October 26, 2016, the QIC rendered an unfavorable decision, concluding that the services did not meet the criteria for Medicare coverage. (R. 151-62).

On February 15, 2017, an administrative law judge (ALJ) found that the services were covered by Medicare Part A as inpatient hospital services because of Phyllis Renzi's underlying medical condition. (R. 30-36, 183-94).

However, on June 14, 2017, the Medicare Appeals Council (MAC)

---

[3] NGS is the Medicare Part B administrative contractor assigned to Massachusetts.

on its own motion decided to review the ALJ's decision. (R. 6). The MAC determined that the ALJ erred in finding the services to be inpatient and held that the services were not covered under Medicare Part A or Part B. (R. 8-12). The plaintiff subsequently initiated this action seeking review of the Secretary's final decision as made by the MAC.

### III. Relevant Factual Background

Phyllis Renzi suffered from various autoimmune disorders, including scleroderma (CREST syndrome) and Raynaud's phenomenon. (R. 57-58). Her medications induced xerostomia (dry mouth) that caused her to develop severe gingivitis and gum disease. (Id.). Due to these issues, Phyllis Renzi was evaluated by Dr. Leland Blough, DMD, who recommended she have her remaining teeth extracted. (R. 59). After consulting with her other treating physicians, Dr. Blough concluded that the extractions should take place at the Hospital under anesthesia. (Id.).

On the morning of January 20, 2016, Phyllis Renzi was admitted to the Hospital for oral surgery, where she received preoperative monitoring, IV anesthesia during surgery, postoperative monitoring from a recovery room, and prescribed medication. (R. 71, 94, 107-22). She was discharged almost seven hours later the same day. (R. 71).

### IV. Discussion

The plaintiff raises three arguments in challenging the MAC's

decision to reverse the ALJ's ruling. He argues first that the ALJ did not err in finding that the services provided to his wife were inpatient. He argues next that he is entitled to coverage because the dental services she received were incident to and an integral part of an otherwise covered procedure, treatment of his wife's scleroderma. Finally, the plaintiff maintains that he is entitled to coverage because he, his wife and Dr. Blough did not know, and could not reasonably have been expected to know that the services she received would not be covered.

The Secretary argues that substantial evidence in the record supports the MAC's determination that the dental services were performed outpatient, that the services were not incident to and an integral part of an otherwise covered procedure, and that Phyllis Renzi is liable for the costs of these services.

**Standard of Review**

Once the Secretary has rendered a final decision on a Medicare claim, judicial review of that decision is available in the same manner as provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act. *Heckler v. Ringer*, 466 U.S. 602, 605 (1984). A court reviews the findings of the MAC only to determine whether the findings are supported by substantial evidence, and whether the correct legal standard was applied. *Teague v. Colvin*, 151 F. Supp. 3d 1, 2 (D. Mass. 2015). Substantial evidence to support a decision exists if "a reasonable

4

mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Id.* This court may affirm, modify, or reverse the MAC's decision, but reversal is only warranted if the MAC made a legal or factual error in evaluating the plaintiff's claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the MAC. *Roman-Roman v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 410, 411 (1st Cir. 2004). This court therefore must affirm the MAC's decision if it is supported by substantial weight, even if the record could arguably support a different conclusion. *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

**Analysis**

The Medicare program provides medical insurance for eligible aged and disabled persons. 42 U.S.C. §§ 1395 *et seq.* It consists of Part A, 42 U.S.C. § 1395c *et seq.*, which covers inpatient hospital and related post-hospital benefits on behalf of eligible individuals, and Part B, 42 U.S.C. § 1395j *et seq.*, which provides a voluntary supplemental insurance program for payment of various other health services. Congress specifically excludes from Medicare coverage "services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth," except under Part A "in the case of inpatient hospital services in connection with the provision of

5

such dental services if the individual, because of [her] underlying medical condition and clinical status . . . requires hospitalization in connection with the provision of such services." 42 U.S.C. § 1395y(a)(12). Thus, dental procedures are excluded from coverage except for inpatient hospital services in connection with such procedures. Id.; 42 C.F.R. § 411.15. Put somewhat differently and more simply, Medicare does not provide coverage for teeth extractions performed on an outpatient basis.

The plaintiff argues that Phyllis Renzi's underlying medical conditions required her to have these dental extractions performed in a hospital setting under anesthesia. To support his argument, the plaintiff cites the ALJ, who found factually that the services were performed inpatient. He notes further that the ALJ cited the Medicare Benefit Policy Manual (MBPM) definition of inpatient as "a person who has been admitted to a hospital for bed occupancy for purposes of receiving inpatient hospital services." MBPM, CMS Pub. 100-02, Ch. 1, § 10. The MBPM moreover states that a patient may be considered an inpatient if formally admitted as inpatient even if she is later discharged. Id.

However, and as the Secretary points out, it is nonetheless true that Phyllis Renzi was, notwithstanding these assertions, admitted as an *outpatient* at the Hospital on January 20, 2016. (R. 82). According to Dr. Blough's notes, after consulting with Phyllis Renzi's other treating physicians, they all concurred that

6

her dental extractions should take place at the Hospital as outpatient surgery under anesthesia. (R. 59). Similarly, and consistent with that classification, the claims the Hospital submitted for her for payment were for outpatient services under Medicare Part B. (R. 166). This matters because "hospitals are solely responsible both for submitting claims for items and services furnished to beneficiaries and determining whether submission of a Part A or Part B claim is appropriate." *Clarification of Billing Under Medicare Parts A and B*, CMS Ruling 1455-R, at 11-12 (Mar. 13, 2013). Finally, there is no evidence in the record to indicate that Phyllis Renzi was anticipated to stay beyond January 20, 2016, i.e., the day of her procedure, to recover from her extractions.

In sum, there is substantial evidence in the record to support the MAC's finding that the dental services performed on Ms. Renzi were performed outpatient, and thus excluded from coverage under Medicare Parts A and B.

To be sure, the MBPM, through which the Secretary issues his interpretation of the Medicare statute, provides for an exception to the general exclusion of dental services if the service performed is "incident to and an integral part of" an otherwise covered procedure. MBPM, Ch. 15, § 150. The MBPM provides examples of this exception, including "when the reconstruction of a ridge is performed as a result of and at the same time as the

7

surgical removal of a tumor" and when "the extraction of teeth [is] to prepare the jaw for radiation treatment of neoplastic disease." Id. The plaintiff contends that his wife's dental services fall under this exception because it was "for the relief of her severe scleroderma that was causing all of her mouth issues." (D. 27).

The Secretary argues that the services performed on the plaintiff's wife do not meet this exception because there was no covered procedure performed on the same occasion by the same provider as the dental services. *See* MBPM, Ch. 15, § 150; *see also Fournier v. Sebelius*, 718 F.3d 1110, 1116 (9th Cir. 2013); *Wood v. Thompson*, 246 F.3d 1026, 1030 (7th Cir. 2001); *Lodge v. Burwell*, 227 F. Supp. 3d 198, 206 (D. Conn. 2016). The court agrees. When Phyllis Renzi was admitted to the Hospital on January 20, 2016, the only services she was scheduled to receive, and did in fact receive, were the dental extraction and related services. (R. 94-95, 171). Moreover, she did not receive any other treatment for her scleroderma on that date. (Id.) It follows that the dental services she received were not incident to and an integral part of an otherwise covered service.

Finally, the plaintiff urges that he should be entitled to relief under 42 U.S.C. § 1395pp, which allows payment to be made when the beneficiary or her representative, and the provider did not know, and could not reasonably have been expected to know that

the service would be excluded from coverage. Id. at § 1395pp(a)(2). The plaintiff argues that he, his wife and Dr. Blough fully expected Medicare to cover the hospital portion of the dental extractions. However, this provision is facially inapplicable in the plaintiff's case because it applies by its terms only when a claimant's coverage was denied payment "by reason of section 1395y(a)(1) or (9) of this title or by reason of a coverage denial described in subsection (g)." See 42 U.S.C. § 1395pp(a)(1). As noted, Ms. Renzi's claim was denied payment pursuant to subsection (a)(12) and therefore falls outside the scope of the provision.

## V. CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment reversing the Secretary's decision is DENIED and the Secretary's motion for summary judgment affirming its decision is ALLOWED.

*So Ordered.*

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: March 29, 2019